## COMMONWEALTH *vs.* WILLIAM HALL.

A precept from the governor of a state, appointing an agent to receive a fugitive from jus-
tice, which recites that he has made a requisition, agreeably to the Constitution and laws
of the United States, upon the governor of the state into which the fugitive was alleged
to have escaped, is *prima facie* evidence, for the protection of the agent, of the truth
of the recitals.

A warrant issued by the governor of this commonwealth, authorizing the agent of another
state to " take and receive into custody " a fugitive from justice, authorizes him to arrest
such fugitive; and is not repugnant to the Constitution and laws of this state or of the
United States.

The provisions of the Rev. Sts. *c.* 142, § 7, authorizing the governor alone to issue his war-
rant for the apprehension of a fugitive from justice, are not repugnant to the U. S. St. of
1793, directing the demand and surrender of such fugitives to be made by " the execu-
tive authority " of a state.

Upon a requisition from the governor of another state for the surrender of a fugitive from
justice, the governor of this commonwealth issued a warrant for his arrest to an agent
of that state, and a similar warrant to a sheriff and his deputies. *Held,* that an arrest
by a deputy sheriff under the second warrant, and a discharge of the alleged fugitive on
bail on a writ of habeas corpus, did not prevent an arrest by the agent of the other state
under the first warrant.

INDICTMENT for an unauthorized attempt to forcibly and
secretly seize, take, confine, kidnap and imprison Jonas Wyeth,
Jr., with intent to send and convey him out of the Common-
wealth by force and against his will, in violation of the Rev. Sts.
*c.* 125, § 20.

At the trial in the court of common pleas, the district attorney
introduced evidence that Wyeth, having been arrested by Rich-
ardson, a deputy sheriff of this county, and sued out a writ of
nabeas corpus returnable before this court, and pending the
proceedings thereon been admitted to bail, was then taken by
the defendant, which was the act complained of.

The defendant did not deny that he attempted to take Wyeth
and convey him out of the Commonwealth, but justified under
the following processes :

1st. A warrant, dated June 4th 1856, from the Governor of
Iowa to the defendant, the important part of which was as fol-
lows : " Whereas Jonas Wyeth stands charged with committing
the crime of bigamy in Scott County in said state; and it has
been represented to me that he has fled from the justice of this

State of Iowa, and taken refuge within the State of Massachu·
setts; and whereas, agreeably to the provisions of the Constitu·
tion of the United States and an act of congress passed the
twelfth day of February one thousand seven hundred and
ninety three, I have made application to his excellency the
Governor of Massachusetts for the delivery of said Jonas
Wyeth as fugitive from justice; and have also in pursuance of
the power vested in me by law appointed, and by these presents
I do appoint and commission William Hall an agent on the
part of this state, for the purpose of bringing the said Jonas
Wyeth into this state having jurisdiction of said crime afore-
said, whenever the governor of the said State of Massachusetts
shall cause him to be delivered up agreeably to the requisition
aforesaid. Then and therefore to request and require all per-
sons to permit the said William Hall to receive and secure the
said Jonas Wyeth and bring him unmolested into this state,
having jurisdiction of his crime, the said agent peaceably and
lawfully behaving."

2d. A warrant to the defendant, dated June 16th 1856, from
the Governor of Massachusetts, reciting the requisition of the
Governor of Iowa upon him, and proceeding as follows: " And
whereas it appears, from documents exhibited to me, that you
the said William Hall have been duly appointed by the supreme
executive authority of Iowa to receive the said fugitive from the
authority of this commonwealth, and him to transport and convey
to the said State of Iowa; I do hereby, by virtue of the provis
ions of the Constitution and laws of the United States, and the
laws of this commonwealth, authorize you the said William
Hall to take and receive the said Jonas Wyeth into your cus-
tody, and him to convey and transport to the line of this com·
monwealth, there to be dealt with as to law and justice may
appertain. And our civil officers are required to afford you
all needed assistance in obtaining and preserving the custody
of said Jonas Wyeth until he shall be transported to the limits
of the Commonweath of Massachusetts, all of which is to be
without charge or expense to the said commonwealth."

It further appeared that the defendant received from the Gov·

ernor of Massachusetts, together with the last warrant, a process addressed to the sheriff of this county and his deputies, in which the governor recited the requisition of the Governor of Iowa, and his own warrant, and required said sheriff and his deputies and all civil officers within the Commonwealth to afford all needful assistance in the execution thereof; and which was delivered by the defendant to Richardson, who thereupon by the defendant's request arrested Wyeth thereon, but never delivered him to the defendant, in consequence of the proceedings on the *habeas corpus*.

*Sanger*, J. instructed the jury " that the defendant, under the requisition from the governor of Iowa, and as agent under such requisition, had no authority to arrest Wyeth, but that he must apply to the executive of Massachusetts; that on said application it was the duty of said executive, if a proper case was made out, to cause the arrest of Wyeth, and have him delivered to said agent; and that the warrant issued as aforesaid to the defendant, in connection with the warrant delivered to him addressed to the sheriff of Middlesex and by the defendant given to Richardson as aforesaid, did not authorize the defendant himself to arrest Wyeth, but only to receive him and carry him to the line of the State."

The jury found the defendant guilty, and he alleged exceptions, which were argued on the 9th of February 1858.

*C. Cushing & S. Webster*, for the defendant.

*S. H. Phillips*, (Attorney General,*) for the Commonwealth. The extradition of fugitives from justice, as between independent nations, rests wholly upon treaties. By the Constitution of the United States, the states have surrendered to the general government all power over the subject, both as between themselves, and as respects foreign governments; and are expressly prohibited from making treaties. *Holmes* v. *Jennison*, 14 Pet. 570–580. *In re Kaine*, 14 How. 110. U. S. Constitution, art. 1, § 10. The provision of the Constitution for the

---

* Elected in November 1857, under the seventeenth article of amendments of the Constitution, and entered upon his office in January 1858.

surrender of fugitives from justice, escaping from one state into another, cannot be executed without the aid of legislation ; and congress having legislated on the subject, it seems that the states may still pass statutes to assist the operation of the acts of congress. *Commonwealth* v. *Tracy*, 5 Met. 548. *In re Metz-ger*, 1 Barb. 256. *Prigg* v. *Pennsylvania*, 16 Pet. 639. *Moore* v. *Illinois*, 14 How. 22.

The acts of the defendant constitute the offence charged, un-less he was justified by the requisition of the governor of Iowa and the warrant of the governor of Massachusetts. And his justification fails.

1. Because the requisition of the governor of Iowa was not accompanied by a certified copy of an indictment found, or an affidavit, as required by the act of congress of 1793, *c.* 45 ; and because the warrant from the governor of Massachusetts does not recite that the requisition of the governor of Iowa was accompanied by the required evidence. 1 U. S. Sts. at Large, 302. *Ex parte Smith*, 3 McLean, 121. *In re Clark*, 9 Wend. 212. *Ex parte Thornton*, 9 Tex. 635. *British Prisoners*, 1 Woodb. & Min. 69. Declaration of Rights, art. 14.

2. Because the warrant from the governor of Massachusetts to the defendant did not authorize the arrest. The Constitution of the United States and the act of 1793 contemplate an arrest by the authorities of the state in which the fugitive is found, and a subsequent delivery to the agent of the State making the requisition; and to construe the word "take" in Rev. Sts. *c.* 142, § 7, as synonymous with "arrest," would be also repug-nant to the Constitution of Massachusetts, which provides for the election of officers qualified to make arrests. Const. Mass. amendments, art. 19. The governor cannot give such power to the agent of another state.

3. Because this warrant was issued by the governor of this commonwealth alone, and not by the governor with the advice and consent of the council. The Constitution and laws of the United States vest the power of demanding and surrendering fugitives in the executive authority of the state, but by the Con-stitution of Massachusetts the executive authority for all civil

purposes is vested in the governor and council; and no power other than legislative or military is vested in the governor alone, except the necessary power of assembling the council. Constitution of Mass. c. 2, § 4. The St. of 1801, c. 10, of which § 7 of the Rev. Sts. c. 142 is substantially a reënactment, provided that the warrant to the foreign agent should be issued by the governor with the advice of the council; and so the law stood till St. 1819, c. 76. Considering the inconvenience of this requirement in a case demanding often so speedy action (which inconvenience probably led to its repeal in 1819) this statute must be regarded as a contemporary interpretation of these words "executive authority," entitled to great consideration.

4. A person arrested under an executive warrant as a fugitive from justice is entitled by *habeas corpus* to try the legality of his arrest. *Ex parte Smith*, 3 McLean, 121. *British Prisoners*, 1 Woodb. & Min. 66. It was a contempt of this court to seize Wyeth, while on bail pending the proceedings on the *habeas corpus*, with intent to carry him out of the jurisdiction of the court. 4 Bl. Com. 285. If the defendant's acts were a contempt, they were unlawful, and an unlawful act cannot be a valid execution of process.

BIGELOW, J. The several objections made by the attorney general to the justification relied on by the defendant seem to us to be untenable.

1. The precepts issued by the governor of the State of Iowa and by the governor of this commonwealth are in conformity with the act of congress of February 12th 1793, c. 45, § 1, and the provisions of the Rev. Sts. c. 142, § 7. By the recital in the former it appears that the requisition on the governor of this state was made in strict conformity with the act of congress. Being an official precept, issued with all the formalities required by law and regular on its face, all its recitals are in the absence of controlling proof to be taken as true. It is not therefore open to the government to object that the requisition on the governor of this state was not accompanied by a certified copy of an indictment found on an affidavit as required by the U. S. St. of 1793, § 1. The precept produced by the defendant

was *prima facie* evidence, at least, that all necessary legal pre-requisites had been complied with, and he was entitled to the benefit of the maxim, *omnia rite acta presumuntur.*

2. The warrant in express terms authorized the defendant to "take" the fugitive as well as to "receive, convey and transport him to the line of the Commonwealth." The word "take" in the sense in which it is used in this precept is synonymous with "arrest." It is the technical word used in all writs and precepts by which a sheriff or other officer is commanded to arrest the body, and in this sense it is frequently used in the statutes of this commonwealth. Rev. Sts. *c.* 90, § 3; *c.* 111, § 5; *c.* 135, § 2. In the same sense it is manifestly used in the Rev. Sts. *c.* 142, § 7, under which the precept in the present case was issued to the defendant. Nor is there anything in the Constitution or laws of this commonwealth to restrain the power of the governor in giving this authority to the defendant. On the contrary, he is expressly authorized by the Rev. Sts. *c.* 142, § 7, to issue his warrant authorizing the agent of the State that makes the demand to arrest the fugitive. By the U. S. St. of 1793, he is also empowered to cause the arrest to be made. So that in issuing his precept to the defendant for the arrest of the fugitive, the governor of this commonwealth acted in conformity to the laws both of this state and of the United States.

3. It is objected, however, that the governor had no authority to issue the warrant to the defendant without the advice and consent of the council. This objection is founded on the phraseology of the U. S. St. of 1793, which authorizes the "executive authority" of a state to demand the surrender of fugitives from justice and to arrest and deliver them up. The argument is that under the Constitution of this commonwealth the executive authority is not vested in the governor alone, but in the governor aided by the advice and consent of the council. But we think this is founded on too narrow an interpretation of the act of congress. By the term "executive authority" as there used, nothing more was intended than to prescribe the department of the government to which application should be made for the surrender of fugitives from justice. It was the execu-

tive authority, as distinguished from the judicial and legislative branches of the government, that was to exercise the power and authority conferred by the act. But it was not intended that every member of that department should be called into action for the purpose; but only so much thereof as should be necessary to carry its provisions into effect. The provision of the Rev. Sts. *c.* 142, § 7, authorizing the governor to issue his warrant for the apprehension of the fugitive, was therefore in accordance with the act of congress; and being intended to aid in the enforcement of that law, and not being repugnant to any provision in the State Constitution, it is not open to the objection urged by the prosecution. *Commonwealth* v. *Tracy,* 5 Met. 548.

4. The writ of *habeas corpus* in no way affected the validity of the precept under which the defendant arrested Wyeth. It was wholly a collateral and independent proceeding, and did not necessarily involve the question of the validity of the extradition of the alleged fugitive, nor would his discharge from custody on the precept held by the deputy sheriff have absolved him from arrest on that held by the defendant. The latter might well be a valid subsisting warrant, although the former had been adjudged informal and void. *Exceptions sustained.*

# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF BRISTOL, PLYMOUTH, BARNSTABLE AND DUKES COUNTY, OCTOBER TERM 1857, AT PLYMOUTH.

———

PRESENT:

HON. LEMUEL SHAW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY, ⎫
HON. THERON METCALF, ⎬ JUSTICES.
HON. BENJAMIN F. THOMAS, ⎭